Bocees, J.
This is an appeal by the plaintiff from a judgment directed by a referee dismissing the complaint on the merits, with costs.
The action was brought for the foreclosure of a mortgage. The defense was want of consideration. There is no question of law involved in the case. Its rightful decision depends upon the construction and effect to be given the evidence submitted to the referee on the trial.
The plaintiff’s intestate, the mortgagee, and the defendant, the mortgagor, were brothers. In 1873 the latter purchased the mortgaged premises, a vacant lot in the village of West Troy, paying therefor $1,000. Soon thereafter (May 28th) he executed to his brother the mortgage in suit, purporting to secure the payment of $1,000 in five years from date, with interest annually, which principal sum was about the full value of the lot. The mortgage was not executed by his wife; nor was it accompanied by a bond or other personal security; and the words referring to an accompanying bond, as also the words expressing a covenant on the part of the mortgagor to pay the money thereby secured contained in the printed blank used in drawing up the mortgage, were erased therefrom. No payment of principal or interest was ever made or demanded before the mortgagee became insane, probably in or about 1882, some eight years after the execution of the mortgage and several years after the principal became due. These facts and circumstances were supplemented by the evidence given by a witness who testified that he had a conversation with Patrick, the mortgagee, prior to the giving of the mortgage in which he stated “that Edward was wild and he was afraid Edward would lose the lot, he was drinking so';, he said he would try and get Edward to give him a *798 mortgage so as to prevent his squandering it, and prevent others from taking it away from him.” This witness further testified that he afterwards had another conversation with the mortgagee, in which the latter stated that Edward had given him the mortgage; that the object in giving it was “that others could not take it away from him in case he got in debt;” that “there was so much saved anyway;”- that “the object was to save it for Edward’s wife and children, so that he, Edward, could not go away with it.” This witness also testified that Edward “was pretty wild at times;” that after and during years succeeding the purchase of the lot Edward used to drink once in a while; that he got drunk soon after the purchase and went to Ireland, and was gone eight or ten months; that for the last eight or ten years he had been doing pretty well.
To countervail this proof, the plaintiff called as a witness Robert Brogan, who was a clerk in the store of the mortgagee, who testified that while at the store as such clerk he heard a conversation between the mortgagor and mortgagee in reference to the mortgage. The former said to the latter: “I have another mortgage taken on that build-
ing. It would be better for you to take it. Your money would make more interest than it is making in the bank for you.” Patrick replied: “To hell with you and your mortgage; I’ll have no more to do with them. You haven’t paid any interest on the thousand dollar mortgage, and by and by it will get so high you will never be able to pay it until I sell you out.”. The witness further testified that about last Christmas the mortgagor came to his house, and there, in presence of his wife, offered witness $100 if he would help him, said mortgagor, work out of the mortgage.
George Brogan was called as a witness by the plaintiff, and testified that recently the mortgagor, in the presence of Thomas O’Brien, offered to give witness $100 for witness’ interest in the mortgage, which he declined to accept. He further testified that the mortgagor told him he had paid the mortgage.
These witnesses were nephews of the mortgagee and intended to enforce the mortgage. Thus the case stood on the controlling issue before the referee in substance. Giving full credit to the evidence on the part of the defendant, and to all fair inference deducible therefrom, and the conclusion of the referee, to the effect that the mortgage was without consideration, is well sustained. So, too, on taking into consideration the countervailing evidence submitted by the plaintiff, and the fair preponderance of proof, is, as we think, with the defendant. The mortgage shows on its face that its execution was not in accordance with general *799 usage in giving such security for money loaned or for an ordinary indebtedness; also the evidence, without apparent excuse, of any demand of payment of principal or interest for so many years and until the insanity and death of the mortgagee, is not without suggestion favorable to the defense; and this evidence is given directness and force by the distinct admission of the mortgagee that the mortgage was without consideration, and was given with an object which had facts affording it a reasonable probability.
On the other hand, the countervailing proof is not like that of the defendant’s witness—distinct and direct to the point in issue. It rests in inference, with more or less force, to be sure, as it may be held suitable—an inference deducible from the silence and from the statements of the mortgagee, seemingly inconsistent with a claim of want of consideration. A pretense of payment and an offer to the witness of $.100 for aid in getting rid of the mortgage, if satisfactorily proved, should have force as inconsistent with the defense of want of consideration. As to the offer of $100, it is open to the suggestion that the mortgagee may have preferred this outlay rather than incur the risk and expense of a lawsuit. It must, however, be held in mind that the plaintiff’s witnesses who gave evidence touching these points, were interested in the enforcement of the mortgage. The referee was not bound to give their statements entire and absolute verity. He saw them on the witness stand, could observe their manner of testifying, and joining this with their admitted interest in the event of the suit, it rested with him to determine the effect to be given to their statements. Under such circumstances, it is not generally deemed admissible to disturb the conclusion of the referee, on appeal.
On the whole, we are of the opinion that there exists no just ground to gainsay the finding of the referee on the controlling issue in the case; hence that the judgment should be affirmed.
Judgment affirmed, with costs.
Landon, J., concurs.
Learned, P.J.
The question whether the parties were not in pari delictu, and whether relief against their acts should not for that reason be denied, was not raised.
I concur.